UNITED STATES, Appellant,

v.

Christopher W. TRUE, Construction Electrician Constructionman Recruit, U.S. Navy, Appellee.

Misc. No. 88–32.

NMCM 87 3657M.

U.S. Court of Military Appeals.

Feb. 28, 1989.

For the accused: *Lieutenant Daniel W. Dooher*, JAGC, USNR (argued).

For the United States: *Lieutenant Commander Lawrence W. Muschamp*, JAGC, USN (argued); *Captain Wendell A. Kjos*, JAGC, USN (on brief).

## OPINION OF THE COURT

SULLIVAN, Judge:

The accused was charged[1] with wrongful possession of lysergic acid diethylamide (LSD) (2 specifications) and of marijuana, wrongful possession of LSD with intent to distribute, wrongful distribution of LSD, wrongful use of marijuana, absence without leave, and perjury (2 specifications), in violation of Articles 112a, 86, and 131, Uniform Code of Military Justice, 10 U.S.C. §§ 912a, 886, and 931, respectively. These charges were referred to a general court-martial at Naval Station, Norfolk, Virginia. During pretrial Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearings in October 1987, the prosecution made clear that the convening authority refused to pay the fees of an expert sought by the defense. After concluding that the experts alternatively proffered by the prosecution did not possess adequate qualifications, the military judge abated the proceedings. The Government appealed the abatement order to the Court of Military Review, which concluded that it lacked jurisdiction under Article 62, UCMJ, 10 U.S.C. § 862, to hear this appeal. 26 MJ 771 (1988).

▆ Pursuant to Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), the Judge Advocate General of the Navy requested this Court to review the following issue:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN CONCLUDING THAT THE COURT LACKED JURISDICTION TO ENTERTAIN AN APPEAL FROM THE

---

1. The record of trial does not contain a copy of the charges in the appropriate place (R. 46).

GOVERNMENT UNDER ARTICLE 62, UCMJ, FROM AN ORDER OF THE TRIAL JUDGE ABATING THE PROCEEDINGS BECAUSE THE GOVERNMENT DECLINED TO FUND AN EXPERT INVESTIGATOR THE TRIAL COURT HAD RULED SHOULD BE MADE AVAILABLE TO THE DEFENSE[.]

We hold that the abatement order in this case is the functional equivalent of a "ruling of the military judge which terminates the proceedings" under Article 62(a). Accordingly, we hold that this ruling is a proper subject for appeal by the Government under this statute.

Prior to arraignment, the accused submitted a request for an expert witness. After extended discussion with the military judge, the request was redesignated as being for expert investigative assistance. This service was requested because two witnesses providing the bulk of the Government's proof against the accused on certain drug charges admitted to being on this same drug on or before the charged incidents. Doctor Ronald Siegel, a psychopharmacologist, was proffered to explain "the effects on perception, memory, and thinking of individuals who use LSD." The initial consultation fee for this service was $1,000.00. The Government offered four alternatives, none of whom matched Dr. Siegel's stature or qualifications. The military judge thereafter concluded:

Clearly Doctor Siegel is an expert in this area. I'm not suggesting that the Government has to match article for article or degree for degree, the level of expertise of the expert whom the defense desires. But I do believe there must be some showing of requisite qualifications in the pertinent area of expertise and we just don't have that here. I also believe the Government has had adequate time to do so. So I'm granting the defense motion for employment of Doctor Siegel as an expert assistant in preparation for trial.

On October 9, 1987, the Government moved the judge to reconsider his earlier ruling. Extensive argument followed, whereupon the judge reaffirmed his earlier ruling. The Government then stated that the convening authority refused to pay for Dr. Siegel's services. At this point, the military judge, upon defense request, abated the proceedings.

On appeal, the Court of Military Review concluded that abatement was neither a termination of the proceedings nor an exclusion of material evidence, within the meaning of Article 62(a). It thus held that the military judge's decision was not the proper subject of government appeal under this statute.

-------

As a starting point, we note that Article 62 states, *inter alia:*

(a)(1) In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, *the United States may appeal an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceeding.* However, the United States may not appeal an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification.

(Emphasis added.)

Admittedly, the wording of this statute and its order of presentation is different from that found in the federal civilian statute covering government appeals, 18 U.S.C. § 3731. It states:

In a criminal case *an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information* or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

*An appeal by the United States shall lie to a court of appeals from a decision or order of a district court sup-*

*pressing or excluding evidence or requiring the return of seized property in a criminal proceeding,* not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

*The provisions of this section shall be liberally construed to effectuate its purposes.*

(Emphasis added.)

However, the practical effect of the underlined language in both statutes is the same, *i.e.,* avoidance of technical barriers to government appeals. Moreover, Congress clearly intended that the military statute be interpreted and applied as the federal statute, except where the particulars of military practice dictate a different approach. *United States v. Browers,* 20 MJ 356 (CMA 1985). *See* S.Rep. No. 53, 98th Cong., 1st Sess. 23 (1983); *see also* H.Rep. No. 549, 98th Cong., 1st Sess. 19, reprinted in 1983 U.S.Code Cong. & Admin. News 2177, 2184–85. Prudent advice concerning the use of this procedure should not be confused with an unjustified narrowing of the scope of this statute or deliberate frustration of the will of Congress. *See* Drafters' Analysis of R.C.M. 908, Manual for Courts–Martial, United States,

2. We share the concern of the court below for military judges but recognize that their actions are subject to review as duly prescribed by law.

1984; *United States v. Browers, supra* at 360 (Cox, J., concurring).[2]

In this light, we note that neither military nor federal civilian practice has required that certain talismanic incantations be made by the trial judge as a predicate for a government appeal. An example of this practice is *United States v. Redding,* 11 MJ 100 (CMA 1981), which was an extraordinary-writ case conducted prior to enactment of the military government-appeal statute. There, this Court recognized that an abatement, which effectively curtailed and permanently forestalled prosecution and after which "dismissal was predictable and imminent, ... was tantamount to 'a final disposition of the case.'" *Id.* at 104. The Court of Appeals for the Ninth Circuit has taken a similar approach:

For purposes of determining appealability of an order, "'the trial judge's characterization of his own action cannot control the classification of the action.'" *United States v. Scott,* 437 U.S. 82, 96, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978) (quoting *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553 n. 7, 27 L.Ed.2d 543 (1971) (opinion of Harlan, J.)). The court should instead focus on the effect of the ruling rather than the label placed on it. *United States v. Martin Linen Supply Co.,* 534 F.2d 585, 587 n. 3 (5th Cir.1976), *aff'd,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). An order which is "'tantamount to the dismissal of an indictment' [is] therefore appealable under section 3731, though not labeled a dismissal." *United States v. Tranowski,* 702 F.2d 668, 670 (7th Cir.1983) (quoting *United States v. Esposito,* 492 F.2d 6, 10 (7th Cir.1973), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760 (1974)), *cert. denied* [as to *Tranowski* ], 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984).

*United States v. Lee,* 786 F.2d 951, 955 (9th Cir.1986). Substance, not form, is controlling.

*See United States Navy–Marine Corps Court of Military Review v. Carlucci,* 26 MJ 328 (CMA 1988).

Here, the military judge issued an order directing that the convening authority provide the defense with the requested expert assistance.[3] *See United States v. Presser*, 844 F.2d 1275, 1278–79 (6th Cir. 1988); *United States v. Battisti*, 486 F.2d 961 (6th Cir.1973). Upon notice of refusal to comply and upon defense request, the military judge abated[4] the proceedings in accordance with R.C.M. 703(d). An abatement[5] is not a continuance, especially where intractibility has set in and the direction of a dismissal is imminent. *See United States v. Redding, supra. Cf. United States v. Browers, supra.* Its effect in the present case can be more readily equated with other remedies such as dismissal *(see United States v. Gonzales*, 617 F.2d 1358 (9th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)) or exclusion of the Government's expert evidence *(see United States v. Presser, supra* ) which were otherwise available and subject to appeal. *See United States v. Lee, supra.* Moreover, we note that in federal practice, the conditional nature of the order does not preclude an appeal of such an order under 18 U.S.C. § 3731. In *United States v. Todaro*, 744 F.2d 5 (2d Cir.1984), *cert. denied*, 469 U.S. 1213, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985), an appeal was allowed where evidence *"may be"* suppressed. *Id.* at 8 n. 1. Similarly, in *United States v. Horwitz*, 622 F.2d 1101 (2d Cir.

1980), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 799 (1981), the court determined that a district court ruling that "raise[d] the remote prospect [of] suppression" was appealable under § 3731. *Id.* at 1104. In our view, Article 62 should be construed to include the directed remedy of abatement in this case as well. *See United States v. Redding, supra. See generally United States v. Levasseur*, 846 F.2d 786 (1st Cir.1988). *Cf. United States v. Kane*, 646 F.2d 4 (1st Cir.1981).

The decision of the United States Navy–Marine Corps Court of Military Review is reversed. The record of trial is returned to that court for further proceedings.

Judge COX concurs.

EVERETT, Chief Judge (dissenting):

I

Until 1983, the Uniform Code contained no statutory provision whereunder the Government could appeal from an adverse ruling at the trial level. However, in that year, Congress amended Article 62 of the Uniform Code of Military Justice, 10 U.S.C. § 862, to provide:

In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal an order or ruling of the military judge *which termi-*

---

3. *See generally Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *United States v. Garries*, 22 MJ 288 (CMA), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986).

4. R.C.M. 703(d) states:
   (d) *Employment of expert witnesses.* When the employment at Government expense of an expert is considered necessary by a party, the party shall, in advance of employment of the expert, and with notice to the opposing party, submit a request to the convening authority to authorize the employment and to fix the compensation for the expert. The request shall include a complete statement of reasons why employment of the expert is necessary and the estimated cost of employment. A request denied by the convening authority may be renewed before the military judge who shall determine whether the testimony of the expert is relevant and necessary, and, if so,

whether the Government has provided or will provide an adequate substitute. *If the military judge grants a motion for employment of an expert or finds that the Government is required to provide a substitute, the proceedings shall be abated if the Government fails to comply with the ruling.* In the absence of advance authorization, an expert witness may not be paid fees other than those to which entitled under subsection (e)(2)(D) of this rule.
   (Emphasis added.)

5. In *Carver v. State*, 217 Tenn. 482, 398 S.W.2d 719 (1966), the term "abatement" was defined as follows:
   Abatement, in the sense of the common law, is an entire overthrow or destruction of the suit, so that it is quashed and ended. At common law, a suit, when abated, is absolutely dead. [Citation omitted.] . . .

nates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceeding. However, the United States may not appeal an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification.

Military Justice Act, Pub.L. No. 98–209, § 5(c)(1), 97 Stat. 1393, 1398 (1983) (emphasis added).

Thereby, two limited statutory bases were provided for a government appeal. Clearly, one of those does not apply in the present case, for the military judge's ruling did not exclude evidence. Thus, the issue before us is whether the military judge's ruling at trial "terminate[d] the proceedings." If so, the Government's appeal was proper; and the Court of Military Review was in error. If not, as held by the court below, the Government had no right to appeal.

The courts have interpreted quite liberally 18 U.S.C. § 3731—upon which Article 62 was based. See cases cited in United States v. True, 26 MJ 771, 772 n. 5 (NMCMR 1988). Accordingly, we should adopt a liberal construction of Article 62, because its legislative history reflects that Congress intended for appeals thereunder to be conducted "under procedures similar to an appeal by the United States in a federal civilian prosecution," S.Rep. No. 53, 98th Cong., 1st Sess. 6 (1983) (emphasis added). However, that legislative history does not indicate that Congress intended for the language of Article 62 to be distorted to include appeals of a type clearly not within its purview. The legislative history of Article 62 in no way suggests that an appeal may be taken from a trial ruling which does not "terminate" the proceeding.

When he implemented the new statutory authority under Article 62, the President carefully circumscribed the conditions for government appeals, and he specifically prescribed the procedures under which the Government might take an appeal. See R.C.M. 908, Manual for Courts–Martial, United States, 1984. The drafters of that rule clearly indicated that government appellate recourse via Article 62 was to be infrequent and should be elected only under compelling circumstances:

It is not expected that every ruling or order which might be appealed by the Government will be appealed. Frequent appeals by the Government would disrupt trial dockets and could interfere with military operations and other activities, and would impose a heavy burden on appellate courts and counsel. Therefore, this rule includes procedures to ensure that the Government's right to appeal is exercised carefully. See S.Rep. No. 53, supra at 23.

Drafters' Analysis of R.C.M. 908, Manual, supra at A 21–51 (Ch. 2).

Consistent with the drafters' position, this Court has adopted a narrow construction of the statutory language permitting the Government to appeal from a ruling "which excludes evidence that is substantial proof of a fact material in the proceeding." Thus, in United States v. Browers, 20 MJ 356, 360 (CMA 1985), we held that the military judge had correctly decided that the Government was not entitled to appeal from his denial of a continuance. As we remarked:

Thus the issue is whether denial of a continuance requested so that the Government may produce a material witness constitutes the exclusion of evidence. Most lawyers think of exclusion of evidence as a ruling made at or before trial that certain ... evidence is inadmissible. In short, "excludes" usually is a term of art; and we see no reason to believe that Congress had any different intention in drafting Article 62(a)(1).

Just as we held in Browers that Congress meant what it said in referring to "exclusion" of evidence, I am convinced that, in its reference to an order or ruling "which terminates the proceedings," Congress intended exactly that—a ruling "which terminates the proceedings." For example, if the military judge had ruled that the charges should be dismissed be-

**6**

cause the accused had been denied a speedy trial, that ruling would clearly be appealable by the Government. In this case, however, the judge's ruling did not inevitably lead to termination of the proceedings.

As the Court of Military Review perceptively noted, "In order to determine the appealability of the military judge's ruling, we must look to the underlying ruling itself and not the sanction applied by the military judge to induce compliance." 26 MJ at 773. Here, the "underlying ruling" was that expert investigative assistance was necessary on behalf of the defense and that such assistance should be provided at government expense. The majority opinion fatally errs by failing to recognize that dismissal of the charges did *not* ineluctably flow from this order pertaining to investigative assistance. Indeed, abatement of the proceedings was ordered only because the convening authority refused to comply with the order.

In highlighting the contrast between this type of ruling and those rulings which do lead directly to dismissal, the court below adverted to the grounds for a motion to dismiss listed in RCM 907: "While the list is not intended to be exclusive, MCM, Appendix 21, Analysis at A21–50, it consists of grounds which either reveal a specification as being defective or render the resolution of charges on the issue of guilt otherwise inappropriate. A decision on a motion to provide an investigative assistant, on the other hand, does neither." *Id.* at 773 n. 9.

The case would be different if the judge had ruled that the Government must spend $1,000.00 for an initial consultation fee for the defense. Such a ruling would inevitably lead to dismissal of the charges and would be the functional equivalent of "termination." Here, though, it was the Government itself, in the person of the convening authority, which pushed this case to the point at which we now find it—and it did so by its recalcitrance in the face of the military judge's facially reasonable order.

There is no doubt that the initial order itself would not have been appealable—that is, once the judge had ruled on the expert assistance but before the convening authority had chosen to disregard his order, the Government could not have appealed the ruling under Article 62. I see no reason in law or logic to permit the Government, by its refusal to comply with the judge's ruling, to "perfect" an appealable issue.

The majority cites various precedents interpreting 18 U.S.C. § 3731. These cases concern the authority of the United States to appeal "from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding." *See, e.g., United States v. Presser,* 844 F.2d 1275 (6th Cir.1988). Although these opinions are interesting and probably are reconcilable with our Court's decision in *Browers,* they have nothing to do with the ground that the Government has asserted for its appeal in this case.

## II

The Government is not left without remedy in cases such as this. Both our Court and the Court of Military Review are within the purview of the All Writs Act, 28 U.S.C. § 1651(a), *cf. Unger v. Ziemniak,* 27 MJ 349 (CMA 1989); *United States Navy–Marine Corps Court of Military Review v. Carlucci,* 26 MJ 328 (CMA 1988); *Dettinger v. United States,* 7 MJ 216 (CMA 1979); and so, if the military judge has usurped authority, the Government may seek extraordinary relief in the nature of a writ of prohibition. *Cf. Dettinger v. United States, supra.* However, in the present case, I find it difficult to conclude that the military judge's ruling was such a usurpation of authority as to warrant a writ of prohibition or similar extraordinary relief. *Cf. Murray v. Haldeman,* 16 MJ 74 (CMA 1983).[1]

1. In determining periods of delay for purposes of speedy trial, any period is excluded which results from a petition for extraordinary relief by either party. *See* RCM 707(c)(1)(E).

### III

For the reasons already stated, I would answer the certified issue in the negative. However, since the Court of Military Review did not consider whether the Government's purported appeal under Article 62 might properly be construed as a petition for extraordinary relief under the All Writs Act,[2] I would remand the case to the Court of Military Review to consider that issue and to take action in accord with its determination thereof.

---

**2.** When it is not clear that an appeal is authorized under Article 62, the Government may wish, in the alternative, to petition for extraordinary relief under the All Writs Act. I would not penalize the Government for its failure to do so here. *See Tedders v. Lord,* —— U.S. ——, 109 S.Ct. 486, 102 L.Ed.2d 523 (1988).