UNITED STATES

v.

**Major Gregg H. REINECKE, Military Judge, Appellee,**

**Sergeant Larry L. Lamer FR 511–74–9841, Real Party In Interest.**

**COMR No. 90A–05.**

U.S. Air Force Court of Military Review.

27 July 1990.

Appellate Counsel for the United States: Colonel Robert E. Giovagnoni; Major Paul H. Blackwell, Jr. and Major Brenda J. Hollis.

Appellate Counsel for the Appellee: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Before LEONARD, MURDOCK, RIVES and McLAUTHLIN Appellate Military Judges.

## ORDER

LEONARD, Senior Judge:

The military judge dismissed the charge and specification in this case after finding Sergeant Lamer had been denied a speedy trial. R.C.M. 707(e). The government has appealed that ruling. Article 62, UCMJ, 10 U.S.C. § 862. We find the military judge's ruling to be in error.

In determining whether Sergeant Lamer was denied a speedy trial, the period of contention is a 95 day period from 7 December 1989 through 11 March 1990. The military judge found this period to be attributable to the government. The government maintains that it should have been counted as a defense delay. In order to address the competing contentions and the correctness of the military judge's ruling, we need to set forth the factual background for this period of delay.

At an Article 39(a), UCMJ, session on 5–6 December 1989, the defense asked the military judge to rule on two matters. First, they requested the military judge to order the government to conduct some scientific testing on an item of evidence. Second, they asked the military judge to rule that they were entitled to a specific expert witness and that the proceedings should be held in abeyance until the government approved and funded the expert.

The requested scientific testing was for an item of evidence the government intended to introduce to corroborate the victim's testimony. Sergeant Lamer had been charged with raping his step-daughter. The evidentiary item was a blanket from the victim's bed that had been tested earlier and determined to contain semen stains attributable to Lamer. There were other stains on the blanket and preliminary testing had determined that they were not attributable to the accused or the victim. The defense requested testing at two civilian laboratories to determine if the stains were vaginal fluids and, if so, whether they were attributable to the accused's wife. The defense's position was that this scientific evidence had the potential to severely undermine the testimony and credibility of both the victim and the wife.

Inherent in the request for the scientific testing was a need for a delay in the accused's trial. In the arguments and discussion of this issue, the defense and government agreed that the testing could take as long as six months and that a delay in the trial would be necessary. Prior to the 5 and 6 December sessions, the military judge had denied a defense request for a delay to accomplish the scientific tests. Throughout the record of the 5 and 6 December sessions, it is clearly evident that all parties knew the military judge was being asked to reconsider his prior denial of a delay for the testing. The military judge found that the requested scientific tests were necessary because they could provide exculpatory evidence for the defense. He then granted the defense request that the tests be performed, but added a caveat that, if the first test revealed the stains were not vaginal fluid, he would reconsider his ruling on the second test which was to determine the specific secreter responsible for the stain. The military judge's ruling did not grant any delay for the testing or discuss the treatment of any delay attributable to the testing.

The second matter impacting the contested time period was the defense's request for approval and funding of a specific expert consultant/witness. The individual re-

quested was Dr. McGovern, an expert in analysis of the use of suggestive techniques during child witness interviews. It was the defense's position that there was some indication that suggestive interview techniques and improper use of anatomically correct dolls may have contaminated the child victim and her prior statements. In their view, Dr. McGovern's approval and funding was necessary to allow the defense to develop this issue before and during the trial.

Prior to the 5 and 6 December sessions, the defense had made two written requests to the convening authority for approval and funding of Dr. McGovern as a consultant or expert witness. Although the convening authority had previously approved and funded Dr. McGovern for another case with a very similar issue, this time the approval was not given. Further, no substitute for Dr. McGovern was offered by the government.

After hearing extensive argument on the issue, the military judge found that Dr. McGovern's funding and approval were necessary for the preparation of an adequate defense and that the defense had satisfied the relevancy and necessity requirements of R.C.M. 703(d). The military judge ruled as follows:

> In light of everything that has transpired so far, therefore, I am directing that the government acquire for the defense and employ the defense requested expert consultant and witness, that being Doctor McGovern. And until that is done, as provided for in R.C.M. 703(d), further proceedings on the case are abated. Once that's done, the defense can then resume their preparation for the case with the assistance of the expert consultant and we'll wait on the test results as I've indicated.

After adjournment of the December Article 39(a), UCMJ, session, the government considered appealing the military judge's ruling abating the case. However, no appeal was taken and preparations were undertaken to obtain the scientific tests the military judge had granted the defense. Despite inquiries to the general court-martial convening authority's staff judge advocate by the assistant trial counsel, no approval and funding of the expert consultant/witness was accomplished. When the military judge later asked the trial counsel why the expert was not quickly approved, the trial counsel replied "indecisiveness at the level of 15th Air Force."

On 6 March 1990, an oral report was received on the first scientific test showing that the suspect stains were not identified as vaginal fluid stains. A written report was received and provided to the defense on 12 March 1990. That same day the defense was notified that Dr. McGovern was approved and funded by the convening authority as a defense consultant/expert witness.

Following notification to the military judge of the test results, a conference call was held on 13 March 1990 to determine if further testing were necessary. The parties could not agree and the military judge asked for written briefs. After receiving both briefs, the military judge, on 11 April 1990, denied further testing and granted a defense request for a delay to allow time for preparation and scheduling of the expert. Initially, he set a trial date of 22 May 1990. With the concurrence of the defense, he later changed the trial date to 8 May 1990; but, because of prior commitments of the trial counsel, the government requested a delay until 15 May 1990. However, the defense expert was unavailable for 15 May so the defense requested and received a 22 May 1990 trial date. On 14 May 1990, the military judge convened an Article 39(a), UCMJ, session to consider a speedy trial motion presented by the defense.

After reviewing the motion and hearing the arguments, the military judge found *

---

* Some of the military judge's findings were set forth separately, but others were buried in discussion between the judge and counsel and scattered over fourteen pages of record. Essential findings of fact should be stated on the record separately and succinctly so the reader knows precisely the facts supporting the legal decision. The findings should also be logical and complete enough so that there is no need to resort to other parts of the record for their meaning.

the speedy trial clock began ticking for the government when the charge was preferred against Lamer on 22 August 1989. In calculating total elapsed days for speedy trial purposes, the military judge found the trial start date to be 22 May 1990—the date that all parties had agreed to as the earliest trial start date. Using the two dates of 22 August 1989 and 22 May 1990, the parties agreed and the military judge found that the total number of elapsed days for purposes of speedy trial was 273 days.

The military judge then entered findings allocating exclusions from these 273 days as permitted by R.C.M. 707(c). Under R.C.M. 707(c)(1)(C), he excluded 3 days for pretrial sessions on 5 and 6 December 1989 and 14 May 1990. He excluded 25 August 1989 through 8 September 1989 as a defense delay in the Article 32, UCMJ, investigation. The periods 10 October 1989 through 5 November 1989 and 6 November 1989 through 4 December 1989 were excluded as defense delays from the original trial date of 10 October 1989. He also excluded the period of 12 March 1990 through 21 May 1990 as a period of defense delay. All the exclusions for defense delays were attributed to R.C.M. 707(c)(3).

After making these exclusions, the military judge found the government remained accountable for 129 days and granted the defense motion to dismiss the charge and specification for lack of a speedy trial.

The military judge attributed the 95 day period from 7 December 1989 to 11 March 1990 to the government. However, before doing so, he explained his previous rulings on 6 December 1989. He stated that he viewed the defense request for scientific testing as a defense delay to permit the tests to be accomplished and intended his ruling to be a grant of that delay. However, at the same time, he ordered the proceedings abated until the expert was appointed. He stated that he had anticipated the appointment of the expert was going to be done "expeditiously within a period of a couple of weeks" and that any delay

after appointment of the defense expert would be a defense delay. He concluded by stating:

> So what I'm looking at now is if the issue's going to turn on this idea of abatement ... I think it would have made my situation easier if the government would have went out and immediately obtained the expert ... then in my mind, at least, there'd be no question about who buys the further delay until we get the test in hand.

The military judge found that his intention was to both grant the defense delay for scientific testing and order an abatement until the defense expert was appointed. He also found that an abatement under R.C.M. 703(d) was justified because the government had been "fairly remiss" in responding to repeated "well thought out and presented" defense requests for the expert. He further found that the defense request for the scientific tests and their request for the expert were distinct and separate and there was no good reason for the government to delay the appointment of the expert until the test results were received.

Determining that the accountability for the contested period turned on the fact he had ordered an abatement, the military judge applied the law from R.C.M. 703(d) and the cases of *United States v. Carlisle*, 25 M.J. 426 (C.M.A.1988) and *United States v. True*, 28 M.J. 1 (C.M.A.1989). His conclusion was that the government was accountable for the period of abatement and had, therefore, exceeded the required speedy trial period under R.C.M. 707(a).

In deciding this appeal, we are bound by the military judge's findings of fact unless they are clearly erroneous. *United States v. Burris*, 21 M.J. 140 (C.M.A.1985). Further, in an appeal by the government, we are not permitted to find facts in addition or contrary to the facts found by the military judge. Article 62(b), UCMJ, 10 U.S.C.

Findings of fact should be followed by a clearly identifiable statement of the legal standards applied and their application to the facts. Finally, the military judge should state any conclusions made and the decision. *United States v. Reinecke*, 30 M.J. 1010 (A.F.C.M.R.1990); *United States v. Watts*, 21 M.J. 728 (N.M.C.M.R.1985); R.C.M. 905(d).

§ 862(b); R.C.M. 908(c)(2). Our review is limited to taking action "only with respect to matters of law." *Id.* Since none of the facts relied upon by the military judge were clearly erroneous, we are limited to an analysis of the law of speedy trial and a determination of whether the military judge correctly applied this law to the facts.

■ An accused who is not in pretrial restraint is entitled to be bought to trial within 120 days after his notification of preferral of charges. R.C.M. 707(a)(1). When the defense moves to dismiss charges for lack of a speedy trial, the burden of persuasion for showing compliance with the speedy trial rule is the government's. *Burris,* 21 M.J. at 141.

In order to meet their burden, the government may rely upon a number of permitted exclusions for periods of delay in bringing an accused's case to trial. R.C.M. 707(c). One of these exclusions is "Any period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request or with the consent of the defense." R.C.M. 707(c)(3).

■ When the government fails to comply with a military judge's ruling that the defense is entitled to the employment of an expert witness, the proceedings of a court-martial shall be abated. R.C.M. 703(d). An R.C.M. 703(d) period of abatement of court-martial proceedings is not excluded from the government's speedy trial accountability. *United States v. True,* 28 M.J. 1, 4 (C.M.A.1989).

■ What happens when a military judge orders an abatement of proceedings and approves a defense requested delay and both periods of time run concurrently? Who is accountable for the concurrent period? As far as we can determine, this question has never been previously addressed.

We hold that an abatement properly ordered under R.C.M. 703(d) would prevail over any concurrent period of defense delay. An R.C.M. 703(d) abatement of proceedings provides a military judge with the ability to insure an accused is provided expert witnesses necessary and relevant for his defense. Without this provision, the government could arbitrarily prevent an accused from presenting a defense by refusing to provide funds to hire the expert witness necessary to assert the defense. For the provision to be effective, the abatement must prevail over any concurrent delays that would qualify as exclusions from speedy trial time under R.C.M. 707(c). If the government believes the military judge is incorrect in his determination of the relevance and necessity of the witness or in ordering the abatement, they may appeal the abatement ruling. *True,* 28 M.J. at 2.

■ For a proper abatement of proceedings under R.C.M. 703(d), a number of conditions must be met. First, the military judge must determine that the expert is relevant and necessary. The military judge in this case did properly determine relevance and necessity before granting the defense request for Dr. McGovern.

Second, the military judge must decide whether to grant the defense request for the expert or to find that the government is required to provide a substitute. The military judge also accomplished this step correctly. After considering the evidence and arguments presented by both parties, he determined that there was no adequate substitute for the expert the defense requested.

Third, the military judge enters a ruling granting the defense request for the expert and directing the government to employ and fund that expert for the defense's use. If the military judge has completed this third step *and the government fails to comply with his ruling,* the military judge may then properly abate the proceedings.

The military judge in this case entered his order abating the proceedings at the same time he granted the defense request for the expert. He did not give the government any opportunity to comply with his ruling before abating. We find he erred in prematurely abating the proceedings without meeting the requirements of R.C.M. 703(d).

■ Our finding the military judge erred as a matter of law in abating the proceed-

ings does not relieve the government for accountability for the entire 95 day period in question. We agree with the military judge's findings that the scientific testing and employment of the expert were separate and distinct issues and the government failure, without good reason, to expeditiously employ and fund the expert further delayed the case. Therefore, we find that at least a portion of the 95 days should be attributable to the government.

We also find that the military judge's reliance on *United States v. Carlisle* to be misplaced. *Carlisle* was a case where no effort was made to set the case for trial until the 117th day and then, on the suggestion of defense counsel, a trial date was set that exceeded the 120–day limit. 25 M.J. at 428. The Court held that the suggestion of the defense counsel to set a date that exceeded the limit did not relieve the government of its duty to proceed with the case in a "timely, efficient manner." In the case before us, we have the defense requesting specific scientific testing and acknowledging that they are responsible for any delay attributable to this request. This is more like the case of *United States v. King*, 30 M.J. 59 (C.M.A.1990). In *King*, the accused was responsible for or agreed to a delay to recuse a convening authority and appoint a new convening authority. In that case, the Court held that an accused cannot be responsible for or agreeable to delay and then turn around and demand dismissal for that same delay. 30 M.J. at 66; R.C.M. 707(c)(3). We note that, during the Article 39(a), UCMJ, session of 6 December 1989, the defense stated they would waive any speedy trial issue with respect to this period of delay. Further, at no time during the 95 day period did the defense make a request for a speedy trial. Therefore, considering all the facts and circumstances, we believe fairness requires charging at least some of the 95 day period of contention to the defense for the delay occasioned by their request for scientific testing.

In apportioning the period between the government and defense, we rely on the findings of the military judge that he anticipated the government would act on the ruling to employ the expert "expeditiously within a period of a couple of weeks." Based upon his findings of fact, the military judge could have properly abated the proceedings under R.C.M. 703(d) when the government failed to comply with his ruling within two weeks. Therefore, we charge the defense with a defense delay, resulting from their request for scientific testing, for the 14 day period from 7 December 1989 through 20 December 1989. R.C.M. 707(c)(3). The remaining period of 81 days from 21 December 1989 through 11 March 1990 remains accountable to the government under R.C.M. 703(d). Attributing this 81 day period to the government, the government would be accountable for a total of 115 days which is less than the required speedy trial period under R.C.M. 707(a).

Therefore, we find that the military judge misapplied the proper legal standards and abused his discretion in granting the defense motion to dismiss the charge and specification against Sergeant Lamer for lack of a speedy trial.

The Government's appeal is granted and the ruling of the military judge dismissing the charge and specification is reversed. The record of trial is returned to the convening authority.

Senior Judge MURDOCK concurs.

RIVES, Judge, with whom McLAUTHLIN, Judge joins, concurring.

While I agree that the military judge incorrectly decided that the accused was denied a speedy trial, I write separately to express disagreement with one aspect of the lead opinion.

It is clear that the military judge erred as a matter of law by the manner in which he purported to abate the proceedings. Even though the government had never indicated it would refuse to comply with a judicial order to hire the expert, the judge nonetheless "abated" the proceedings at the same time he granted the defense request for the expert. This premature action does not comport with the requirements of R.C.M. 703(d).

Had the proper abatement procedures been followed, I would find the government accountable for the entire period between the issuance of an order and the time of compliance with it. *See* R.C.M. 703(d); 707(a)(1). However, since the "abatement order" here was improper and ineffectual, I find no reason to accord any special status to that period of time.

Throughout a post-preferral period of 273 days, the trial defense team maneuvered toward two principal goals: (1) to have independent civilian laboratories perform scientific tests; and (2) to receive government funding for a civilian consultant/expert witness. During telephone conferences, through briefs, and at pretrial hearings, the defense focused on their need for exculpatory evidence, evincing an utter lack of concern over the concomitant delay. Indeed, at one point, the defense argued that even six months of delay for testing "seems a small price to pay when Sgt Lamer faces a lifetime behind bars."

In the analysis of this appeal, it is significant that at the same hearing in which the military judge ordered the expert to be appointed, he also ordered testing to be performed. The defense was the moving party for both orders, and the government opposed both. Accepting for the sake of argument that the government was accountable for the delay involved in appointing the expert, the defense remained responsible for the period required for the testing. Since those times ran concurrently, the novel issue presented here is how to apportion (for speedy trial purposes) responsibility for that period of time.

The laboratory tests were conducted by a civilian firm chosen by the defense. The government did not control any aspect of the testing, including the speed at which the tests were performed. The period of time required for appointing the expert and the period required for testing were totally independent of each other. The expert was provided before the testing issue was finally resolved, and the delay in appointing the expert did not impact the delay for testing in any way.

The issue in this case is similar to the situation presented in *United States v. Bragg*, 30 M.J. 1147 (A.F.C.M.R.1990). In that case, the accused had been placed in pretrial confinement by civilian authorities for both civil and military offenses. Although he served a total of more than 120 days of pretrial restraint, this court determined that his speedy trial rights were not violated when he had been held by the civilians for the separate civil and military offenses. The independent yet concurrent basis for the pretrial restraint relieved the government of accountability for that period of time.

In evaluating the period of delay caused by independent reasons that occurred simultaneously, it would not be appropriate in this case to run the speedy trial clock as though the government alone were responsible. Rather, the period required for testing should be excluded from the time accountable to the government. The delay for testing was ordered over the objection of the government, at the specific and repeated requests of the defense, and with the full knowledge that the trial would be delayed for an extended period of time. It would be wrong now to hold the government accountable for the period of delay that was caused by the defense. *See* R.C.M. 707(c)(3). Throughout the 95 day delay in appointing the expert, the defense never raised the speedy trial issue, nor did they demand the expert be appointed immediately.

Even if the expert in this case had been appointed on the very day the judge announced his order, the trial would not likely have proceeded any more quickly. Notwithstanding the period of government delay, the defense delay would have lasted for the same period of time. Accordingly, I disagree with the lead opinion in its determination that some portion of the period from 7 December through 11 March is attributable to the government; I find the defense to be responsible for that entire period of time. I agree with the ultimate decision reached in the lead opinion: the accused was not denied a speedy trial.