UNITED STATES, Appellant,

v.

Benjamin D. TAYLOR, Gunnery Sergeant (E–7), U.S. Marine Corps, Appellee.

NMCM No. 200400414.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 30 Sept. 2004.

LT Colin A. Kisor, JAGC, USNR, Appellate Defense Counsel.

LT Robert Salyer, JAGC, USNR, Appellate Defense Counsel.

LT Frank Gatto, JAGC, USNR, Appellate Government Counsel.

DORMAN, Chief Judge:

The appellee is currently facing trial by general court-martial on numerous charges concerning allegations that he attempted to purchase a minor female and that he possessed child pornography. He is charged with violations of Articles 80 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 934. The alleged offenses occurred between September 2001 and February 2003. He was apprehended on 10 February 2003. A "cooperating witness," hereinafter referred to as JL, brought the appellee's activities to the attention of law enforcement personnel. JL signed a "Declaration of Cooperation" with the Naval Criminal Investigative Service (NCIS) on 7 February 2003. Appellate Exhibit XLV. On that date Special Agent (SA) Massey, from NCIS, opened a "Cooperating Witness Utilization Record" (CWUR) concerning JL.

This is an appeal brought by the Government under Article 62, UCMJ. The Government is appealing a decision of the military judge ordering the Government to provide to the appellee a copy of the CWUR, as redacted by the military judge, and his ruling that if the Government fails to comply with his order, then the Government cannot call JL as a witness.

We have thoroughly reviewed the entire record of trial and the outstanding briefs submitted by the Government and the appellee. We have also considered the excellent oral arguments of appellate counsel, presented to this court on 10 August 2004. Following that review and our consideration of all the materials before us, we conclude that the appeal is properly before us. We also find that the military judge did not abuse his discretion.

### Facts

The appellee was initially arraigned on 9 June 2003. Prior to arraignment the appellee had made several requests for all records concerning JL as a cooperating witness. A motion hearing was conducted on 12 June 2003 at which time the military judge addressed the appellee's motion to compel discovery. On that date the military judge ordered the Government to provide the appellee with all paperwork between NCIS and JL. The military judge also ordered the Government to turn over the NCIS investigative file in the case. Record at 19. On 19 June 2003, the military judge again ordered that "NCIS turn over the entire investigative file ... to the defense as soon as possible." *Id.* at 177. The appellee still had not received the CWUR by 21 July 2003 and he filed another discovery request asking for the "complete confidential informant package on [JL]." Appellate Exhibit XXIII. On 23 July 2003 the military judge ordered the release of the CWUR to the defense as redacted by the military judge. Record at 323.

On 28 July 2003, the Government submitted a motion for reconsideration of the military judge's order to release the CWUR as he had redacted it. During litigation of that motion on 5 August 2003, the trial counsel noted that NCIS had re-evaluated their earlier redaction and had decided that more of the CWUR could be released. Record at 353. The new redaction by NCIS is contained at pages 19–26 of Appellate Exhibit XXX. In support of its motion, the Govern-

ment also introduced the 3–page affidavit of SA Fahey. Appellate Exhibit XXX at 8–10. On 6 August 2003, the military judge once again ordered the Government to turn over the CWUR, with his redactions. Record at 387. In ruling on the motion the military judge found:

One, the government did not show by the preponderance of the evidence that [JL] would be in physical danger if the above documents were released to the defense;

Two, the government did not claim an MRE 505 privilege for non-disclosure of the above documents;

Three, the government did not specifically claim an MRE 506 privilege for non-disclosure of the above documents;

Four, the government did not provide evidence that showed by the preponderance of the evidence that disclosure of the above documents would be detrimental to public interest;

Five, at most, the government stated conclusions that release would be detrimental to public interest, but the government did not provide evidence that supported this conclusion.

*Id.* The military judge also found that the CWUR has "evidentiary value in this court-martial primarily along the lines as providing possible impeachment evidence." *Id.* at 388.

The military judge also imposed the following conditions upon the release of the CWUR:

One, that the defense shall be provided two numbered identifiable copies of the above;

Two, that the defense is ordered that they may not reproduce either of their copies;

Three, that the defense should return both of their copies to the government upon adjournment of this court-martial;

Four, that the defense shall not disclose or discuss the contents of the above documents with anyone with the following two excepts (sic): A, the contents may be discussed in any open session of this court; and, B, the contents may be discussed between Ms. Siegel, Lieutenant Folk, and Gunnery Sergeant Taylor;

Five, if the defense believes disclosure to any other party is necessary, the defense shall seek permission of the court prior to disclosure.

*Id.* Finally, the military judge ruled that if the Government did not provide the CWUR as ordered, then the Government could not call JL as a witness in the case. *Id.*

On 8 August 2003, the Director, NCIS, directed the trial counsel to claim a government privilege under MILITARY RULE OF EVIDENCE 506, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Appellate Exhibit LXVIII. On 19 August 2003, the military judge granted a defense motion for a new Article 32, UCMJ, investigation. Record at 448. Shortly thereafter, the Government withdrew all of the original charges and specifications. *Id.* at 476.

The Charges and Specifications the appellee is now facing were preferred on 5 September 2003 and 12 December 2003, and referred to trial by general court-martial on 16 December 2003. The appellee was arraigned on the current charges on 5 January 2004. Record at 460. On 10 March 2004, the parties agreed that all the evidence from the previous court-martial, "both documentary and oral testimony, would be adopted as part of this court-martial." *Id.* at 464. Additionally, on that day the Government once again asserted governmental privilege under MIL. R. EVID. 506. On 31 March 2004, the military judge again ordered the Government to turn over the CWUR to the defense as he had redacted it. He once again stated that if the CWUR was not released, the Government would be precluded from calling JL as a witness. The relevant portions of his findings are set out below:

1. After original referral of charges, during June 2003, the accused requested the [CWUR] of Confidential Witness [JL]. . . .

2. On 28 July 2003, Special Agent Fahey submitted an affidavit contained in Appellate Exhibit XXX, pages 8, 9, and 10, stating the release of some information in the [JL] utilization may present a danger to [JL] or others.

3. Special Agent Fahey, in very general terms, stated that the disclosure of names of individuals sited in the [CWUR] may

cause a risk of harm to [JL] and may have a negative impact on future investigations.

4. Special Agent Fahey provided no specifics as to how future investigations may be harmed by release of the requested information.

5. On 8 August 2003, the director of the Naval Criminal Investigative Service, NCIS, claimed a governmental privilege. See Appellate Exhibit LIII.

6. The 8 August NCIS letter, Appellate Exhibit LIII, claimed the release of the subject documents would be detrimental to public interests and jeopardize future criminal investigations. The 8 August letter did not provide any details as to how release would be detrimental.

7. On 15 August 2003, the military judge ordered portions of the ... [CWUR] released subject to a protective order.

. . . .

8. Shortly after the judicial order, the original charges were withdrawn; and the 15 August 2003 protective order had no effect; and the subject documents were not provided to the accused.

9. On 16 December 2003, this case was re-referred to a general court-martial.

10. That upon the second referral, the accused renewed his request for ... the [CWUR].

11. On 10 March 2004, the military judge directed the government to comply with M.R.E. 506(f). The military judge further directed that if the government was going to request a judicial *in camera* review, that the documents be delivered to the judge no later than 15 March 2004.

12. That the subject unredacted documents were delivered to the judge on 18 March 2004.

13. The convening authority letter of 15 March 2004 contained in Appellate Exhibit LXXII was delivered on 16 or 17 March 2004. Appellate Exhibit LXXII stated the government's contention that the military judge conduct an *in camera* review of the subject documents.

14. The only evidence presented by the government regarding identifiable damage to the public interest was: One, the NCIS letter of 8 August 2003; and two, the Special Agent Fahey affidavit of 28 July 2003.

*Id.* at 475–76. The military judge again stated his conclusion that the CWUR "may be relevant to the defense when exploring whether or not the NCIS agents involved in this case followed appropriate procedures in the handling of [JL]." *Id.* at 476–77. He further noted that the CWUR "contains numerous issues that could go to *bias* and *credibility* of both [JL] and several of the NCIS agents. To prevent the accused access to this information would substantially tether his ability to prepare for trial and would be counter to M.R.E. 102." *Id.* at 477 (emphasis added). In his findings the military judge determined that "[t]he disclosure of the redacted portion of the subject documents could reasonably be expected to cause identifiable damage to public interest .... [and that] the redacted portions of the [CWUR] are found to be either protected by M.R.E. 506 or not relevant under M.R.E. 401." *Id.* Thereafter, the Government filed a timely notice of appeal.

## Discussion

In its appeal the Government frames the issue as follows:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ORDERING THE GOVERNMENT TO DISCLOSE THE JUDICIALLY REDACTED VERSION OF THE COOPERATING WITNESS SOURCE UTILIZATION RECORD BECAUSE HE FAILED TO PROPERLY BALANCE THE PUBLIC INTEREST IN PROTECTING THE SAFETY OF THE NCIS COOPERATING WITNESS AND PROMOTING HER CONTINUED COOPERATION AGAINST APPELLEE'S RIGHT TO PREPARE A DEFENSE WHEN THE PORTIONS OF THE SOURCE UTILIZATION RECORD ORDERED DISCLOSED BY THE MILITARY JUDGE INVOLVE INFORMANT ACTIVITIES ON ONGOING CRIMINAL INVESTIGATIONS TOTALLY UNRELATED TO APPELLEE'S CASE AND DOES NOT ADD TO THE PREPARATION OF THE

DEFENSE OR ADD ANY ADDITIONAL EVIDENCE OF IMPEACHMENT BUT WILL PLACE THE COOPERATING WITNESS AT THE RISK OF HARM, DISCOURAGE HER FROM FURTHER COOPERATING WITH LAW ENFORCEMENT, AND JEOPARDIZE HER FUTURE USEFULNESS TO LAW ENFORCEMENT.

Government Appeal of 14 May 2004 at 2. A second and preliminary issue also exists, an issue that this court couched in the following terms:

WHETHER WE HAVE JURISDICTION TO HEAR THIS CASE, WHICH DOES NOT CONCERN CLASSIFIED MATERIALS, AND WHERE THE MILITARY JUDGE DID NOT EXCLUDE ANY EVIDENCE, BUT RATHER IMPOSED A SANCTION AGAINST THE GOVERNMENT (PREVENTING THE GOVERNMENT FROM PRESENTING THE TESTIMONY OF A CONFIDENTIAL WITNESS) IF THE GOVERNMENT REFUSED TO DISCLOSE EVIDENCE THAT THE MILITARY JUDGE DETERMINED TO BE RELEVANT AND MATERIAL.

### Jurisdiction

■ Article 62, UCMJ, allows the Government, under specified conditions, to appeal an order of a military judge "which excludes evidence that is substantial proof of a fact material in the proceeding." Article 62(a)(1)(B), UCMJ. It also authorizes the appeal of an order that either "directs the disclosure of classified information," or "imposes sanctions for nondisclosure of classified information." Art. 62(a)(1)(C) and (D), UCMJ. Additionally, MIL. R. EVID. 506(j) seemingly authorizes the Government to appeal an order by a military judge to disclose "government information, or impose[ ] sanctions for nondisclosure...." In its appeal the Government has asserted jurisdiction under all of these provisions.[1] Jurisdiction of this court to act is based upon our statutory authority found in the UCMJ. We find no

statutory support in the UCMJ for the language contained in MIL. R. EVID. 506(j) granting us jurisdiction to consider a Government appeal of an order by a military judge to disclose "government information, or impose[ ] sanctions for nondisclosure...." Accordingly, we find jurisdiction solely under Article 62(a)(1)(B), UCMJ.

■ The appellee argues that the issue on appeal is the order of the military judge to deliver his redacted version of the CWUR to the appellee, and that this issue does not include exclusion of evidence. The exclusion is merely a remedy for failing to comply with the order of the military judge. He argues that the Government is still the "gate-keeper" of the evidence. Thus, the issue is not ripe for appeal. Appellee's Response Brief of 3 Jun 2004 at 8–9.

While the appellee is technically correct, we find that this case is quite similar to *United States v. True*, 28 M.J. 1 (C.M.A. 1989). In *True* the military judge had granted a defense request for expert investigative assistance. When the Government refused to pay for the assistance, the military judge granted a defense motion to abate the proceedings. The Government appealed the abatement order under Article 62, UCMJ. This court concluded that it did not have jurisdiction to hear the appeal, reasoning that the abatement was neither "a termination of proceedings" nor an "exclusion of material evidence." *United States v. True*, 26 M.J. 771, 772–73 (N.M.C.M.R.1988). The decision of this court was reversed by the Court of Military Appeals. Our superior court held that, under the facts of that case, the abatement order was the "functional equivalent" of a ruling by the military judge that terminated the proceedings of the court-martial. *True*, 28 M.J. at 2. Additionally the court noted that the "practical effect" of the language in Article 62, UCMJ, which authorizes the Government to initiate an appeal, is the "avoidance of technical barriers to government appeals." *Id.* at 3.

---

1. At oral argument the Government conceded that the CWUR is not classified information as defined by Article 2(15), UCMJ.

In the case before us, the military judge has neither terminated the proceedings nor excluded any evidence. He has ordered the Government to provide his redacted version of the CWUR to the appellee. He has also ruled that if the Government fails to comply with his order then it cannot call JL as a witness. Clearly, the exclusion of JL's testimony would constitute the exclusion of "evidence that is substantial proof of a fact material in the proceeding." Article 62(a)(1)(B), UCMJ.

Under the facts of this case, and applying the principles contained in *True,* we conclude that the military judge's ruling was the functional equivalent of an order excluding evidence. To hold otherwise would be merely erecting a technical barrier to the appeal. For example, were we to conclude that we did not have jurisdiction at this time and return the case to the trial level, the Government could call JL to the witness stand and force the military judge to specifically rule that JL cannot testify. At that time the Government could file an appeal under Article 62, UCMJ, and there would be no question concerning jurisdiction. As our superior court noted in *True,* "[s]ubstance, not form, is controlling." *True,* 28 M.J. at 3. We will therefore not require the military judge to specifically exclude evidence in this case. Given the current posture of the case, that would elevate form over substance. We have jurisdiction. *Id.* at 2.

### Abuse of Discretion

■ The standard of review in this case is abuse of discretion. *United States v. Rivers,* 49 M.J. 434, 437 (C.A.A.F.1998); *United States v. Houser,* 36 M.J. 392, 397 (C.M.A. 1993); *United States v. Hatfield,* 43 M.J. 662, 664 (N.M.Ct.Crim.App.1995), *rev'd on other grounds,* 44 M.J. 22 (C.A.A.F.1996). Furthermore, "[u]nder Article 62, UCMJ, our review is generally limited to matters of law. With respect to factual matters, we must defer to the findings of the trial judge if those findings are 'fairly supported by the record'...." *Hatfield,* 43 M.J. at 664 (quoting *United States v. Burris,* 21 M.J. 140, 144 (C.M.A.1985)). In that the Government is appealing the decision of the military judge in this case, it is the Government that carries

the burden of persuasion that the military judge abused his discretion. *Houser,* 36 M.J. at 397; *Hatfield,* 43 M.J. at 664. In applying the abuse of discretion standard of review, we are not free to substitute our judgment for that of the military judge. *Burris,* 21 M.J. at 144.

In this case the Government presented the CWUR to the military judge for his *in camera* review of the document in accordance with MIL. R. EVID. 506(i). He conducted a review of the materials in accordance with that rule. In preparing the redacted copy of the CWUR, which he ordered released to the appellee, it is clear to us that he applied the standard for disclosure set out in MIL. R. EVID. 506(i)(4)(C). Specifically, that standard provides that protected Government information will not be released unless "the party making the request demonstrates a specific need for information containing evidence that is relevant to the guilt or innocence ... of the accused, and is otherwise admissible in the court-martial proceeding." MIL. R. EVID. 506(i)(4)(C). Furthermore, the requirement of MIL. R. EVID. 506(i)(4)(D) that the ruling be in writing is met by the fact that he set forth his findings in the record, and the record has been transcribed and authenticated. Finally, the military judge's sanction for non-disclosure, specifically precluding the Government from calling JL as a witness, is an authorized sanction under MIL. R. EVID. 506(i)(4)(F).

We have reviewed the entire record submitted to this court and do not find any basis to question the findings of the military judge. His redaction of some portions of the CWUR, in and of itself, demonstrates that the military judge has balanced the Government's interest to protect the public interest against the appellee's need for the information. So, too, do the conditions of disclosure the military judge imposed upon the appellee. The thrust of the Government's appeal, both in writing and during oral argument, was that the appellee already has enough evidence with which to impeach JL and/or the NCIS agents who worked with JL. The Government, however, has cited no case authority to us for the novel proposition that relevant impeachment evidence can be withheld from the accused simply because the

accused already has other impeachment evidence. The Government does cite *Rivers,* 49 M.J. at 436–37. Government Appeal of 14 May 2004 at 21. In *Rivers,* however, the military judge found that the evidence he withheld from the accused was not relevant. Applying an abuse of discretion standard, the appellate courts upheld that decision. In the case before us, the military judge found the evidence to be relevant, specifically stating that the evidence could go to bias of JL as well as the NCIS agents. Record at 477. "Evidence of bias can be powerful impeachment." *United States v. Saferite,* 59 M.J. 270, 273 (C.A.A.F.2004)(citing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Applying the same deferential standard of review as applied in *Rivers,* we uphold the military judge in this case.

## Decision

With the exception of the correction addressed below, the Government appeal is **DENIED.**

We note an obvious error in the redaction made by the military judge. In the entry of May 27, 2003, the military judge redacted the name of a possible suspect in the second paragraph of that entry, but then did not redact the last name of that same possible suspect in the last sentence of the entry. In the interest of judicial economy, we direct the redaction of the possible suspect's last name in the last sentence of that entry.

Judge SUSZAN and Judge HARRIS concur.