*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
DALY, GROSS, and HARRELL
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Willie C. JETER**
Lieutenant Junior Grade (O-2), U.S. Navy
*Appellee*

**No. 202400364**

_____

Decided: 21 May 2025

Appeal by the United States Pursuant to Article 62, Uniform Code of Military Justice

Military Judge:
Derek A. Poteet

Before a general court-martial convened at Naval Station Norfolk, Virginia.

For Appellant:
*Lieutenant Kevin M. Parker, JAGC, USN* (on brief)
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (on brief)
*Lieutenant Colonel Candace G. White, USMC* (argued)

For Appellee:
*Captain Kyle W. Rodewald, USMC* (on brief and argued)

Judge HARRELL delivered the opinion of the Court, in which Chief Judge DALY and Senior Judge GROSS joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

HARRELL, Judge:

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(A), Uniform Code of Military Justice (UCMJ).[1] Appellee is charged with several offenses involving several alleged victims, and the Government appeals an order abating the proceedings with respect to the charges and specifications relating to one of the alleged victims due to the Government's loss of the recording of her 911 call. The Government raised one issue on appeal: whether the military judge erred by (1) abating proceedings under Rule for Courts-Martial (R.C.M.) 703(e)(2) without finding the 911 call was clearly exculpatory; and (2) failing to consider important facts and apply correct legal principles in finding the victim's prior testimony and 911 call reports were not adequate substitutes to impeach the victim on her identification of Appellee.[2] We hold that the military judge reached the right result—though for a different reason—and we deny the Government's appeal.

## I. BACKGROUND

This case has a complex procedural history,[3] but the relevant facts for present purposes are straightforward:

---

[1] 10 U.S.C. § 862(a)(1)(A).

[2] The Court heard oral argument at the George Washington University Law School on 2 April 2025 on this issue, in addition to whether we have jurisdiction under Article 62, UCMJ.

[3] Appellee was convicted in 2017 of the offenses for which he now pends trial, but the U.S. Court of Appeals for the Armed Forces (CAAF) set aside the findings and sentence and authorized a rehearing. *United States v. Jeter*, 84 M.J. 68 (C.A.A.F. 2023). This is referred to as *Jeter I* in the record. The subsequent proceedings resulting in an abatement and mistrial are referred to as *Jeter II*. The current proceedings are referred to as *Jeter III*.

1. In a pretrial ruling, a military judge abated the proceedings with respect to some charges and specifications pursuant to R.C.M. 703(e)(2)[4] due to the Government's loss of evidence—the recording of a 911 call;

2. The Government moved for reconsideration, offering new evidence (but not the lost recording). The military judge did reconsider, and she upheld her abatement order.

3. The Government did not appeal the abatement order—affirmatively stating to the military judge during an Article 39(a), UCMJ, session, "the government is not going to pursue a[n Article] 62 appeal"[5]—and proceeded to trial before members with the remaining charges and specifications;

4. The military judge declared a mistrial before findings for reasons unrelated to the abatement order;

5. The Government re-referred all charges and specifications, including those abated by the military judge;

6. Upon defense motion, a second military judge again abated the same charges and specifications, adopting the ruling of the first military judge; and,

7. The Government now appeals the second military judge's abatement order.

## II. DISCUSSION

### A. Jurisdiction

We first attend to Appellee's argument that we lack jurisdiction to entertain this appeal. Article 62 authorizes the government to appeal "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification."[6] To do so, "trial counsel [must] provide[] the military judge with written notice of appeal from the order or ruling within 72 hours of

---

[4] That Rule provides:

> [A] party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. However, if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

[5] App. Ex. XXV(a) at 124.

[6] Article 62(a)(1)(A), UCMJ.

the order or ruling. Such notice shall include a certification by the trial counsel that the appeal is not taken for the purpose of delay . . . ."[7]

The question of whether an abatement order is one which "terminates the proceedings with respect to a charge or specification" is not novel. In *United States v. True*, the U.S. Court of Military Appeals (CMA) held "that the abatement order in this case is the functional equivalent of a 'ruling of the military judge which terminates the proceedings' under Article 62(a). Accordingly . . . this ruling is a proper subject for appeal by the Government under this statute."[8] The CMA reasoned:

> [T]he military judge issued an order directing that the convening authority provide the defense with the requested expert assistance. Upon notice of refusal to comply and upon defense request, the military judge abated the proceedings in accordance with R.C.M. 703(d). An abatement is not a continuance, especially where intractibility [sic] has set in and the direction of a dismissal is imminent. Its effect in the present case can be more readily equated with other remedies such as dismissal or exclusion of the Government's expert evidence which were otherwise available and subject to appeal.[9]

More recently in *B.M. v. United States*, the CAAF stated without any nuance of intractability:

> This Court has recognized that Article 62(a), UCMJ, authorizes the government to take an interlocutory appeal asking for the lifting of an abatement order. In *United States v. True*, the Court reasoned that an "abatement order . . . is the functional equivalent of a 'ruling of the military judge which terminates the proceedings' under Article 62(a)" and held that such a "ruling is a proper subject for appeal by the Government under this statute."[10]

---

[7] Article 62(a)(2)(A), UCMJ.

[8] 28 M.J. 1, 2 (C.M.A. 1989).

[9] *Id.* at 4 (citations and footnote omitted).

[10] 84 M.J. 314, 319 (C.A.A.F. 2024) (cleaned up). Additionally, in *United States v. Hohman*, the CAAF affirmed this Court's grant of an Article 62 appeal of a military judge's abatement order without even pausing to discuss jurisdiction, much less intractability. 70 M.J. 98 (C.A.A.F. 2011). *But see United States v. Harding,* 63 M.J. 65,

Required or not for Article 62 jurisdiction, intractability has set in. The evidence is lost, and the record is bare of any hope for it to ever be found.[11] After concluding that the evidence is relevant, necessary, "of such central importance to an issue that it is essential to a fair trial, and . . . there is no adequate substitute for such evidence,"[12] the second military judge imposed the remedy required by R.C.M. 703(e)(2)—abatement.[13] As in *True*, "the abatement order in this case is the functional equivalent of a 'ruling of the military judge which terminates the proceedings' under Article 62(a)."[14]

The remaining jurisdictional hurdle is that of timing. The second military judge issued the abatement order on 17 September 2024,[15] and the trial counsel provided notice of appeal no more than 72 hours later on 19 September 2024.[16] This simple math does not resolve the matter in Appellee's view, however. Instead, Appellee argues, the clock started much earlier when the first military judge abated the proceedings with respect to the charges and specifications at issue: "[R]e-referral of the abated charges eighteen days after the

---

67 (C.A.A.F. 2006) (concluding that an abatement order did not terminate the proceedings and was therefore not appealable by the Government under Article 62 when the military judge "issued a warrant of attachment, which the Government vigorously defended before the Tenth Circuit as 'valid and enforceable upon its issuance.' . . . [T]he Government has acknowledged that the 'United States Marshals Service has not enforced the writ of attachment the military judge issued for these records.' The responsibility for enforcing the warrant of attachment rests with officers of the Executive Branch. The rulings of the military judge . . . demonstrate that he is prepared to move forward with the trial if and when the warrant is executed.").

[11] *See* App. Ex. IV at 11–15 ("[N]o [Hampton University Police Department] 911 [call] exists *currently*. . . . The Government was grossly negligent when it lost the recording. . . . The originating agency, Hampton University, does not currently have the recording. . . . The government has no idea what happened to the 911 audio that they possessed.").

[12] R.C.M. 703(e)(2).

[13] *United States v. Simmermacher*, 74 M.J. 196, 201 (C.A.A.F. 2015) ("If a continuance or other relief cannot produce the missing evidence, the remaining remedy for a violation of R.C.M. 703(f)(2) is abatement of the proceedings."). Executive Order 13825 moved this "*Unavailable evidence*" rule from R.C.M. 703(*f*)(2) to R.C.M. 703(*e*)(2) in 2019. *See 2018 Amendments to the Manual for Courts-Martial, United States*, Exec. Order No. 13825, Annex 1 (2018).

[14] 28 M.J. at 2. Appellee does not dispute that abatement orders are generally appealable. *See* Appellee's Answer at 16 ("The *Jeter II* [abatement] ruling was subject to Article 62.").

[15] App. Ex. LXVI.

[16] App. Ex. LXIX at 4.

appeal period expired cannot extend it. Furthermore, unlike a motion to reconsider, this Court and the CAAF have never held re-referral of charges restarts the Article 62 clock."[17]

This argument fails to grasp the import of the specific language of Article 62(a)(1)(A). In holding that the government may appeal a mistrial declaration, which does not foreclose *future* proceedings with respect a charge or specification, the CAAF has explained:

> The key words here are "terminates *the* proceedings *with respect to* a charge or specification." (Emphasis added.) In our view, these elements of the text make it clear that the article refers to terminating *that particular court-martial* in regard to a charge or specification. This interpretation is buttressed by the fact that the article does not refer to "[a]n order or ruling of the military judge which terminates all proceedings with respect to a charge or specification" but instead refers to "the" proceedings. And importantly, this interpretation is further buttressed by the fact that the article does *not* refer to "[a]n order or ruling of the military judge which terminates a charge or specification" but instead refers to "[a]n order or ruling of the military judge which terminates *the proceedings with respect to* a charge or specification." (Emphasis added.) These words—"the proceedings with respect to"—are not mere "surplusage" but instead have "independent meaning." *See United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010) (declining to hold that the phrase "should be approved" in Article 66, UCMJ, was surplusage without independent meaning). And we conclude that the independent meaning of these words is that Article 62(a)(1)(A) encompasses those instances where a particular court-martial is terminated in regard to a specific charge or specification.[18]

Just as Article 62(a)(1)(A) does not say "*forever* terminates *all* proceedings with respect to a charge or specification," neither does it say "*for the first time* terminates *any* proceedings with respect to a charge or specification." Just as we do not look at the possibility of future proceedings, neither do we look at previous proceedings. We look no further than this *particular* court-martial.

---

[17] Appellee's Answer at 21. Appellee also argues that the doctrine of res judicata deprives us of jurisdiction. Appellee's Answer at 23–25. As will be seen, res judicata plays an integral role this appeal, but not yet.

[18] *United States v. Badders*, 82 M.J. 299, 303–04 (C.A.A.F. 2022) (alterations in original).

The Government has timely appealed an order terminating the proceedings with respect to the charges and specifications at issue, and we have jurisdiction.[19]

**B. The second military judge did not abuse his discretion in abating the proceedings with respect to the charges and specifications at issue.**

The extent of the appealed ruling (in an email) is as follows:

> The Court provides this Notice of Ruling with respect to the Defense motion for appropriate relief regarding lost evidence. In its motion, the Defense, under Rules for Courts-Martial 703(e)(2) and 914, asked this Court to abate Specification 1 of Charge V, Specification 1 of Charge VI, and Specifications 1 & 2 of Charge VII, consistent with the ruling issued during [Appellee]'s previous court-martial on these charges, or to preclude M.H. from testifying.

> This Court has conducted a de novo review of these matters. After reviewing the parties' respective filings and enclosures, and carefully considering the applicable case law, the rules, the previous military judge's ruling, and the arguments of counsel, this Court finds that the ruling issued 1 June 2024 on these issues during the previous court-martial was fully correct. New evidence has not been presented altering that analysis. This Court accordingly adopts the previous ruling issued 1 June 2024.

> Thus, to the extent the Defense motion requested that the Court abate Specification 1 of Charge V, Specification 1 of Charge VI, and Specifications 1 & 2 of Charge VII, the Defense motion is GRANTED. To the extent the Defense motion asked to preclude M.H. from testifying as the Government is unable to produce statements of M.H., a Government witness, it is DENIED as unripe.[20]

---

[19] If this were a close call, Article 62(e)'s liberal construction mandate would tip us in favor of appealability. *See id.* at 304 ("Article 62(e), UCMJ, explicitly states that the 'provisions of this section shall be liberally construed to effect its purposes.' It would contradict this statutory mandate to adopt Appellant's restrictive view that Article 62(a)(1)(A) refers only to those narrow circumstances where all proceedings are forever terminated in regard to a charge and specification.").

[20] App. Ex. LXVI.

The second military judge did *not* rule that he was required to adopt the first military judge's ruling or that it had any enduring effect.[21] He decided instead, as a matter of discretion, to adopt the first military judge's ruling as his own since he agreed with it. Accordingly, he concluded, as the first military judge did, that abatement was required pursuant to R.C.M. 703(e)(2) due to the Government's loss of the recording.

We review the second military judge's ruling on the motion to abate for abuse of discretion,[22] and we "consider the evidence in the light most favorable to the party that prevailed at trial—in this case, Appellee."[23] In *United States v. Lincoln*, the CAAF explained:

> The Government initially determines the scope of the appeal [under Article 62] by deciding which issues to appeal and the grounds on which to appeal. When the Government appeals an adverse ruling, the defense may assert additional or alternate grounds for affirming the ruling. . . . The court below was confronted with arguments by appellate defense counsel on alternate theories on which the military judge's ruling might be supportable. Since the defense is entitled to argue alternate grounds to support the military judge's ruling and did so in this case, it was proper for the Government to respond to those arguments and for the court below to consider them, to the extent possible on the basis of the record before them. Thus we hold that the court below did not err in the manner asserted by appellant, i.e., by making rulings of law on issues not decided by the military judge.[24]

---

[21] The Defense earlier moved the court, "Pursuant R.C.M. 915, R.C.M. 905(g), and the law of the case doctrine . . . to find that the previous rulings in the case are . . . in effect unless this court finds cause to reconsider and changes the rulings of this case." App. Ex. VII at 1. The second military judge ruled on that motion as follows:

> The Court provides this Notice of Ruling that the Defense MFAR under RCM 905 regarding Law of the Case is DENIED on the law. However, for reasons of judicial economy, the Court in its discretion is inclined to adopt the prior rulings of the previous military judge . . . but will consider motions to revisit those matters without imposing the high burden required for reconsideration.

App. Ex. XVII at 1.

[22] *United States v. Ivey*, 55 M.J. 251, 256 (C.A.A.F. 2001).

[23] *United States v. Flanner*, 85 M.J. 163, 169 (C.A.A.F. 2024).

[24] 42 M.J. 315, 320–21 (C.A.A.F. 1995) (cleaned up).

Additionally, the CAAF recently stated in *United States v. Vargas* that, even in the Article 62 context, "This Court is empowered to affirm a military judge if her ruling reached the correct result for the wrong reason."[25] We do that here. As in *Lincoln*, Appellee has raised an alternate ground to support the military judge's ruling, and the Government has responded thereto. Unlike *Lincoln*, however, that alternate ground was also raised and litigated at the trial level.[26] Therefore, unlike *Lincoln*, *Vargas*, and *United States v. Kosek*,[27] the record is fully developed on this alternate ground, and we need not return it for clarification. We conclude that the second military judge did not abuse his discretion in abating the proceedings with respect to the charges and specifications at issue. We reach that conclusion not by application of R.C.M. 703(e)(2), as the military judge did, but by application of R.C.M. 905(g).

Appellee primarily raises res judicata as an impediment to our jurisdiction, but also contends that we should affirm the second military judge's ruling on res judicata grounds.[28] In support, Appellee points to *United States v. Yonan* from the U.S. Court of Appeals for the Seventh Circuit.[29] In *Yonan*, the district court judge dismissed one count of the indictment on 15 November and later "re-dismissed" the same count from a superseding indictment on 2 December, "saying that he 'had previously ruled on' that count and was dismissing it 'for precisely the same reasons [he] stated in [his] earlier opinion.'"[30] The government filed notice of appeal pursuant to 18 U.S.C. § 3731 on 30 December, and the Seventh Circuit affirmed:

> Yonan moved to dismiss the government's appeal of the sole proprietorship count on the grounds that the government failed to file a timely notice of appeal. We agree that the government failed properly to appeal the original dismissal of that count within the thirty-day period afforded by the statute, 18 U.S.C. § 3731. We disagree, however, with Yonan's assertion that this

---

[25] 83 M.J. 150, 156 (C.A.A.F. 2023) (citations omitted).

[26] App. Ex. VII; App. Ex. XI; App. Ex. XVII at 1.

[27] 41 M.J. 60 (C.M.A. 1994).

[28] Appellee's Answer at 24 n.94 ("The *Jeter III* judge should have enforced the abatement ruling on res judicata grounds rather than considering the merits of the issue. However, this Court can affirm his ruling enforcing the abatement using the cross-appeal doctrine. An appellee or respondent may defend the judgment below on a ground not earlier aired." (internal quotation marks and citations omitted)).

[29] 800 F.2d 164 (7th Cir. 1986).

[30] *Id.* at 165–66 (alterations in original).

failure results in a lack of appellate jurisdiction. Since the government *did* appeal within thirty days of the December 2nd order, and since the December 2nd order contained a disposition of the sole proprietorship count, we have jurisdiction to review the district court's December 2 action dismissing that count. Nevertheless, that dismissal was merely an application of the doctrine of *res judicata*, since the district court previously had determined the identical issue between the parties. Therefore, we will not extend our review to examine the merits of the original November 15 decision, but affirm the ultimate dismissal as an appropriate exercise of *res judicata* principles. Were we to undertake a review of the merits, we would be allowing the government indefinitely to avoid the statutory thirty-day interlocutory appeals period simply by obtaining superseding indictments. In order to avoid this result, we hold in this case that *res judicata* bars the extension of the thirty-day period in which the government could appeal the dismissal of the sole proprietorship count.[31]

The Government counters that *Yonan* is inapposite since here we have an intervening mistrial and re-referral of charges rather than a dismissal and a superseding indictment. We disagree with the Government's position regarding the effect of the mistrial in this context, as we will discuss later. We consider *Yonan* persuasive, both in terms of its analysis of government appeals pursuant to 18 U.S.C. § 3731[32] and the application of res judicata, which is applicable in courts-martial pursuant to R.C.M. 905(g).[33]

---

[31] *Id*. at 166 (footnote and citations omitted).

[32] *See United States v. Jacobsen*, 77 M.J. 81, 86 (C.A.A.F. 2017) ("Congress authorized federal civilian government appeals in criminal cases under 18 U.S.C. § 3731 before it authorized them in the military, and modeled Article 62, UCMJ, in large part, after 18 U.S.C. § 3731. Consequently, it is proper for this Court to look to cases interpreting it for guidance. However, the statutes are not identical, and this Court has recognized that guidance does not mean binding precedent, in the interpretation of Article 62." (citations and internal quotation marks omitted)).

[33] *See United States v. Jackson*, 20 M.J. 83, 85 (C.M.A. 1985) ("[The] doctrine [of res judicata] is made applicable to military law by paragraph 71b, [Manual for Courts-Martial, United States, 1969 (Revised edition)] . . . ."). The doctrine is currently reflected in R.C.M. 905(g), based in part upon paragraph 71b, though the "legalistic and potentially confusing" term of res judicata is no longer used. *Manual for Courts-Martial, United States* (1984 ed.) [*MCM* (1984)], app. 21, Analysis [R.C.M. 905 Drafters' Analysis] at A21-48.

Rule 905(g), titled "*Effect of final determinations*," provides in relevant part:

> Any matter put in issue and finally determined by a court-martial, reviewing authority, or appellate court which had jurisdiction to determine the matter may not be disputed by the United States in any other court-martial of the same accused, except that, when the offenses charged at one court-martial did not arise out of the same transaction as those charged at the court-martial at which the determination was made, a determination of law and the application of law to the facts may be disputed by the United States.[34]

The question, then, is whether the first military judge's abatement ruling constitutes a final determination of a matter put in issue.

We begin by noting that personal and subject-matter jurisdiction at the first court-martial are not in dispute, and the first military judge was empowered to rule on the missing evidence motion and issue the abatement order.[35] Second, the precise matter put in issue before the first military judge—the fact and effect of the lost recording—was again raised before the second military judge. Nothing changed.[36] The same charges and specifications were before the court, the Defense raised the same motion, and the Government offered no new evidence in response.[37] The result would obviously be different if the Government found a recording of the 911 call, and it may even be different if the Government offered *something* new which may affect the "adequate substitute" analysis of R.C.M. 703(e)(2).[38] In those instances, the "matter put in issue" at

---

[34] R.C.M. 905(g).

[35] *See* R.C.M. 801(a) ("The military judge is the presiding officer in a court-martial. The military judge shall: . . . (4) Rule on all interlocutory questions and all questions of law raised during the court-martial . . . .").

[36] *See* App. Ex. LXVI ("In its motion, the Defense. . . asked this Court to abate Specification 1 of Charge V, Specification 1 of Charge VI, and Specifications 1 & 2 of Charge VII, *consistent with the ruling issued during [Appellee]'s previous court-martial on these charges* . . . . [T]his Court finds that the ruling issued 1 June 2024 on these issues during the previous court-martial was fully correct. *New evidence has not been presented altering that analysis.*" (emphasis added)).

[37] The Government acknowledged during oral argument that it presented no new evidence to the second military judge.

[38] "[I]f such evidence is of such central importance to an issue that it is essential to a fair trial, *and if there is no adequate substitute for such evidence*, the military judge

11

the two courts-martial would be different, and R.C.M. 905(g) would not apply. For example, in *United States v. Jackson*, after the military judge granted a defense motion to dismiss a charge and specification because the charge sheet did not reflect that the sworn charge was received within the statute of limitations, the government referred an identical charge and specification to court-martial, but this time, the charge sheet *did* reflect timely receipt.[39] Our predecessor court held that res judicata, then applicable by paragraph 71b of the Manual for Courts-Martial (1969 Rev. ed.), did not apply:

> Appellant . . . claims that the protection of the doctrine of res judicata precludes his subsequent trial on the charge dismissed on 20 May 1982. The issue before the earlier court, however, was whether that court could try appellant for the charge of unauthorized absence at a court-martial referred to trial with the [first] charge sheet, which the military judge ruled not to have successfully tolled the statute of limitations. The second trial, based as it was upon the [second] charge sheet, was not similarly barred since the statute had been successfully tolled by the preferral and receipt of sworn charges in a timely fashion. *Entirely different issues were before the second court with defense counsel's motion to dismiss.* The doctrine of res judicata, therefore, was inapplicable.[40]

The CMA agreed:

> The matter litigated at the first proceeding was simply that the charge sheet then before the court had not been received at a time which complied with Article 43 of the [UCMJ]. Neither the accused's guilt nor innocence of the charge was at issue. At the second proceeding, a charge sheet timely received in terms of Article 43 was before the court; *no issue litigated before was relitigated.*[41]

Not so here. The same issue litigated before was relitigated.

---

shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings . . . ." R.C.M. 703(e)(2) (emphasis added).

[39] 15 M.J. 988, 988–89 (N.M.C.M.R. 1983).

[40] *Id*. at 989–90 (emphasis added) (citations omitted).

[41] *United States v. Jackson*, 20 M.J. 83, 86 (C.M.A. 1985) (emphasis added).

The tougher question is whether the first military judge's abatement order constituted a final determination for purposes of R.C.M. 905(g). The Government says no: As a result of the later mistrial, the Government argues, "there is no final determination or ruling to give legal effect to for purposes of res judicata."[42] Implicit in this argument is that nothing short of findings will imbue finality to rulings in court-martial proceedings. A superficial reading of the Discussion of the Rule may support this,[43] but deeper inspection reveals otherwise.

We start with a few superficial observations of our own. First, the Discussion to R.C.M. 915(a), concerning mistrials, says in part, "See also R.C.M. 905(g) concerning the effect of rulings in one proceeding on later proceedings,"[44] suggesting at the very least that R.C.M. 905(g) is not *always* inapplicable to rulings made in proceedings terminated by mistrial. Second, the Discussion to R.C.M. 905(g) itself says, "It does not matter whether the earlier proceeding ended in an acquittal, conviction, *or otherwise*, as long as the determination is final."[45] Further, the CMA long ago held that the doctrine of res judicata applies not only in instances where "a determination of guilt or innocence" has been made, but to "issues interlocutory in nature."[46]

We also note that the R.C.M. 905(g) Discussion provides four examples of when the Rule does and does not apply, two of which concern dismissal rulings. They indicate that the dismissal ruling is a final determination, indisputable by the government at a subsequent court-martial, *unless the circumstances changed*. That is, a dismissal ruling for lack of personal jurisdiction is binding at a subsequent court-martial unless, in the interim, personal jurisdiction *did* attach.[47] And, a dismissal ruling for failure to state an offense is binding at a

---

[42] Appellant's Reply at 7.

[43] *See* R.C.M. 905(g) Discussion ("Except for a ruling which is, or amounts to, a finding of not guilty, a ruling ordinarily is not final until action on the court-martial is completed. *See* Article 76; R.C.M. 1209.").

[44] R.C.M. 915(a) Discussion. We recognize that "[t]he Discussion . . . does not have the force of law, even though it may describe legal requirements derived from other sources. It is in the nature of [a] treatise, and may be used as secondary authority." *MCM* (2024 ed.), app. 15, Analysis of the Composition of the Manual, the Preamble, and the Rules-for Courts-Martial at A15-2.

[45] R.C.M. 905(g) Discussion (emphasis added).

[46] *United States v. Smith*, 4 C.M.A. 369, 372-73, 15 C.M.R. 369, 372–73 (1954).

[47] *See* R.C.M. 905(g) Discussion ("(1) The military judge dismissed a charge for lack of personal jurisdiction, on grounds that the accused was only 16 years old at the time

subsequent court-martial for the same offense unless the specification is corrected to properly state an offense.[48] There is no indication that some further action, such as continuation of the proceedings with respect to other charges and specifications through findings and, if necessary, completion of appellate review, is required to bestow finality to the dismissal ruling.[49] In this sense, the dismissal ruling—*terminating the proceedings* with respect to the *affected* charges and specifications—has the immediate effect of finality for purposes of R.C.M. 905(g).[50]

We see no justification to treat an abatement order under intractable circumstances differently than a dismissal order in this context since both have the effect of terminating the proceedings. In fact, returning to *True*, the CMA seemingly adopted the following definition: "Abatement, in the sense of the common law, is an entire overthrow or destruction of the suit, so that it is quashed and ended. At common law, a suit, when abated, is absolutely dead."[51] In doing so, the CMA rejected our predecessor court's characterization of an abatement order as "a temporary forestalling of the court-martial" until the

---

of enlistment and when the offenses occurred. At a second court-martial of the same accused for a different offense, the determination in the first case would require dismissal of the new charge unless the prosecution could show that since that determination the accused had effected a valid enlistment or constructive enlistment. See R.C.M. 202. Note, however, that if the initial ruling had been based on an error of law (for example, if the military judge had ruled the enlistment invalid because the accused was 18 at the time of enlistment) this would not require dismissal in the second court-martial for a different offense."). *See also MCM* (2016 ed.) [*MCM* (2016)], app. 21, Analysis of Rules for Courts-Martial [R.C.M. 907 Drafters' Analysis] at A21-56. ("Res judicata would bar retrial by a court-martial for a jurisdictional defect which is not 'correctable.'").

[48] *See id.* ("(4) At a court-martial for absence without authority, the charge and specification were dismissed for failure to state an offense. At a later court-martial for the same offense, the earlier dismissal would be grounds for dismissing the same charge and specification, but would not bar further proceedings on a new specification not containing the same defect as the original specification.").

[49] Nor is there any indication that if the proceedings continued with respect to *other* charges and specifications and then terminated in a mistrial, the finality of the unrelated dismissal ruling would retroactively become undone. More on that later.

[50] *Cf.* R.C.M. 907(a) Discussion ("Dismissal of a specification on grounds stated in R.C.M. 907(b)(1) or (b)(3)(A) does not ordinarily bar a later court-martial for the same offense *if the grounds for dismissal no longer exist*. See also R.C.M. 905(g) and R.C.M. 907(b)(2)." (emphasis added)).

[51] 28 M.J. at 4 n.5 (quoting *Carver v. State*, 217 Tenn. 482, 484, 398 S.W.2d 719, 719 (1966)). The term is undefined in the *MCM*, and we are unaware of a more authoritative definition than *True*'s.

14

satisfaction of a condition.[52] When the "directed remedy" of abatement is applied, particularly under intractable circumstances, the proceedings are terminated with respect to the affected charges and specifications.[53] And under the circumstances of this case, that is a final determination by the court-martial for purposes of R.C.M. 905(g).[54]

We acknowledge Article 76, UCMJ, which, as the CMA explained in *United States v. Washington*, "unquestionably defines final judgments in the military justice system and concomitantly controls the application of the doctrine of collateral estoppel therein."[55] In *Washington* (which appears to be the inspiration for the first example in the R.C.M. 905(g) Discussion),[56] our predecessor court declined to give res judicata effect to a military judge's determination of lack of personal jurisdiction from a court-martial initiated and finalized *after* the court-martial then under review.[57] The CMA disagreed: "The United States Navy Court of Military Review was bound by the final judgment of the subsequently initiated court-martial as to the same issue of jurisdiction still pending before them in the present court-martial. Article 76, UCMJ."[58] In other words, the second in time court-martial became final (as a result of the ruling of lack of jurisdiction) before the first in time court-martial, which resulted in findings of guilt and appellate review, thus prolonging finality pursuant to Article 76. As a result, the final determination of no jurisdiction from the second court-martial could not be disputed by the Government during appellate review of

---

[52] *United States v. True*, 26 M.J. 771, 772 (N.M.C.M.R. 1988), *rev'd*, 28 M.J. at 1.

[53] *True*, 28 M.J. at 4.

[54] We have no occasion to consider the impact of R.C.M. 905(g) upon other types of rulings, such as evidentiary ones, and nothing from this opinion should be interpreted as such.

[55] 7 M.J. 78, 79 (C.M.A. 1979) (citing *Schlesinger v. Councilman*, 420 U.S. 738, 746, 749 (1975)). *See also* R.C.M. 905(g) Discussion ("[A] ruling ordinarily is not final until action on the court-martial is completed. *See* Article 76; R.C.M. 1209."). We also note that the R.C.M. 1209 Drafter's Analysis says, "As to the finality of an acquittal *or disposition not amounting to findings of guilty*, see Article 44 [Former jeopardy] and"— with dizzying circularity—"R.C.M. 905(g)." *MCM* (2016), R.C.M. 1209 Drafters' Analysis at A21-97 (emphasis added).

[56] *See MCM* (1984), R.C.M. 905 Drafters' Analysis at A21-48 (citing *Washington* among other authorities).

[57] *United States v. Washington*, 5 M.J. 736 (N.M.C.M.R. 1978), *rev'd*, 7 M.J. 78, 79 (C.M.A. 1979) (summary disposition).

[58] *Washington*, 7 M.J. at 79 (additional citations omitted).

the first. An implication, highly instructive for present purposes, is that a ruling terminating the proceedings quickens finality under Article 76 and R.C.M. 905(g), if not compacting it to the ruling itself.

We have considered whether under present circumstances the language of Article 76, "as approved, reviewed, or affirmed as required by [the UCMJ]," encompasses Entry of Judgment under Article 60c, UCMJ.[59] Is a ruling that terminates the proceedings without findings not final for purposes of R.C.M. 905(g) until judgment is entered (if at all)? We decline to adopt such a reading to the extent that the resolution of this issue would teeter on the haste or delinquency of the military judge entering judgment.[60] According to the oft-cited Restatement of Judgments, a "final judgment" for res judicata purposes "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."[61] Further:

> In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. . . . Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.[62]

---

[59] *See also* R.C.M. 1209(b) ("*The judgment of a court-martial* and orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States . . . . (emphasis added)).

[60] *See* R.C.M. 1111(e)(1) ("When a court-martial results in a full acquittal *or when a court-martial terminates before findings, the judgment shall be entered as soon as practicable.*" (emphasis added)). The parties agreed at oral argument that the first military judge did not complete an entry of judgment.

[61] Restatement (Second) of Judgments § 13 (Am. L. Inst. 1982). This treatise is among the authorities upon which R.C.M. 905(g) is based. *MCM* (1984), R.C.M. 905 Drafters' Analysis at A21-48 ("[T]his subsection is based on . . . *Restatement of Judgments*, Chapter 3 (1942).").

[62] Restatement (Second) of Judgments § 13 cmt. g.

Here, the first military judge's abatement ruling was not tentative. Nor was it conditioned in any respect (e.g., for a definite period or until an event occurs). The matter was fully briefed and argued by both sides, and the first military judge issued a written ruling. The matter was again briefed and argued by both sides in the context of reconsideration, and the first military judge upheld her ruling. As discussed in section II.A. above, abatement orders are subject to appeal, which the Government forewent. These factors demonstrate that the first military judge's abatement order is sufficiently firm to be accorded conclusive effect, and under the circumstances of this case, it is a final determination for purposes of R.C.M. 905(g), irrespective of an Entry of Judgment.[63]

The final issue is that of the effect of the mistrial upon the abatement order. The Government essentially contends that the mistrial had the effect of nullifying the abatement order, thus freeing the charges and specifications subject to it for re-referral along with all the others without any concern of R.C.M. 905(g). We disagree. The fact that the proceedings continued with respect to *other* charges and specifications after the first military judge's abatement order and then terminated in a mistrial does not alter the "final determination" analysis of R.C.M. 905(g). We are unable to conclude, as we must to side with the Government, that R.C.M. 905(g) requires different treatment of abatement orders depending on whether all or only some referred charges and specifications are subject to it. The mistrial, having "the effect of withdrawing the *affected* charges and specifications from the court-martial,"[64] had no effect upon charges no longer before the court.[65] In other words, the proceedings were terminated with respect to the charges and specifications at issue (by the abatement order) before the proceedings were terminated with respect to the remainder (by the mistrial). The mistrial wiped the slate with respect to the unabated charges and specifications, but it did not have the effect of lifting or nullifying the abatement order.[66] In a sense, the Government finds itself boxed

---

[63] We pause briefly to highlight a distinction between reconsideration by a military judge within the *same* court-martial pursuant to R.C.M. 905(f) and R.C.M. 905(g)'s preclusive effect in "any *other* court-martial."

[64] R.C.M. 915(c)(1) (emphasis added). *See also* RCM 915(c)(1) Discussion ("Upon declaration of a mistrial, *the affected charges* are returned to the convening authority, or special trial counsel as applicable, who may refer them anew or otherwise dispose of them." (emphasis added)).

[65] *Cf. True*, 28 M.J. at 4 ("[An abatement's] *effect* in the present case can be more readily equated with other remedies such as dismissal . . . ." (emphasis added)).

[66] *Cf. Remco, Inc. v. Faber Bros., Inc.*, 34 F.R.D. 259 (N.D. Ill. 1964). In *Remco*, the District Court dismissed a count and trial proceeded on a remaining count, resulting

in, appealing the second military judge's abatement order as a termination of the proceedings while trying to avoid the implication of the same ruling by the first military judge having the same effect. We conclude that R.C.M. 905(g) precludes the Government from having it both ways.

In *United States v. Smith*, the CMA noted the "broad and sweeping" language of R.C.M. 905(g)'s predecessor, paragraph 71b, which "covers any issue of fact or law in issue and finally determined; makes no distinction as to issues directly involved or collaterally involved; . . . and we find no good reason to interpret the provision so narrowly as to require the accused again to litigate an issue which has been decided in his favor."[67] Though R.C.M. 905(g) is narrower in many respects than paragraph 71b,[68] its language remains broad

---

in a deadlocked jury and a mistrial. *Id.* at 260. Upon retrial, the District Court held that res judicata precluded resurrection of the dismissed count:

> Plaintiff now urges upon the Court that the [first] count, dismissed at the close of plaintiff's evidence on the ground that upon the facts and the law the plaintiff had shown no right to relief, is again viable and at issue at the second trial. Plaintiff reasons that, a mistrial having often been said to be no trial at all, the retrial is a de novo litigation of all elements of the previous trial. This neglects to recognize the fact that the decision which the jury was not able to reach -- the impasse which necessitates the retrial of this action -- related only to the counts still in the case at the time the jury was sent out to deliberate. . . . The second trial is not intended to afford either party an opportunity to fortify a position it was unable to maintain in the previous trial. The second trial is limited to a presentation of evidence on issues upon which the jury at the first trial was unable to agree. The retrial is the result of a deadlock upon certain issues submitted to the jury and is thus limited to those issues. The Court's determination as a matter of law on the [first] count is res judicata subject only to appeal.

*Id. Cf. also Cleveland v. Cleveland Elec. Illuminating Co.,* 538 F. Supp. 1328, 1331 (N.D. Ohio 1981) ("[A] retrial following a mistrial is a trial de novo only as to those issues actually remaining in controversy, i.e. those matters which were not the subject of dispositive rulings by the trial court during the course of the earlier proceeding.").

[67] 28 M.J. at 374.

[68] *See MCM* (1984), R.C.M. 905 Drafters' Analysis at A21-48 ("[R.C.M. 905](g) differs from paragraph 71b in two significant respects. First, the term 'res judicata' is not used in R.C.M. 905(g) because the term is legalistic and potentially confusing. 'Res judicata' generally includes several distinct but related concepts: merger, bar, direct estoppel, and collateral estoppel. . . . Second, unique aspects of the doctrine of collateral estoppel are recognized in the 'except' clause of the first sentence in the rule. . . . Unlike

enough to prohibit what the Government endeavors here: after declining to pursue an interlocutory appeal, re-referring abated charges and specifications with the hope of avoiding the same result despite the underlying circumstances remaining unchanged.

Like the Seventh Circuit in *Yonan*, we do not extend our review to the merits of the abatement order but affirm it nevertheless pursuant to R.C.M. 905(g).[69] Were we to review the merits of the abatement order, we would be allowing the Government indefinitely to avoid the statutory 72-hour interlocutory appeals period simply by re-referring abated charges and specifications. The second military judge did not abuse his discretion in abating the proceedings with respect to the charges and specifications at issue since that matter had previously been put in issue and finally determined by a court-martial.

### III. CONCLUSION

After careful consideration of the record, briefs, and argument of appellate counsel, the military judge's ruling is affirmed. The case is returned to the Judge Advocate General for remand to the military judge for further proceedings consistent with this opinion.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

other forms of res judicata, collateral estoppel applies to determinations made in actions in which the causes of action were different. Because of this, its application is somewhat narrower. Specifically, parties are not bound by determinations of law when the causes of action in the two suits arose out of different transactions. This distinction is now recognized in the rule. . . . To the extent that *Smith* relied on [paragraph 71b of] the Manual, its result is no longer required." (citations omitted)).

[69] *See* R.C.M. 905(g) Discussion ("The United States is bound by a final determination by a court of competent jurisdiction even if the earlier determination is erroneous, except when" certain circumstances, not present here, apply.).